**Frederick B. Harding, Administrator, Appellee, v. St. Louis National Stock Yards, Appellant.**

1. INSTRUCTIONS—*when assumption of facts will not reverse.* Even though an instruction assumes the existence of a particular fact, it is not harmful and will not reverse where the cause was tried upon the assumption of the particular facts urged as having been improperly assumed by the instruction criticised.

2. INSTRUCTIONS—*when does not give undue prominence. Held,* that the instruction criticised in this case did not erroneously give undue prominence to a particular witness or to a particular feature of the cause.

3. INSTRUCTIONS—*when giving undue prominence will not re-*

verse. Notwithstanding an instruction may give special promi-
nence to particular evidentiary facts, it will not reverse if such evi-
dentiary facts are of controlling importance.

4. EVIDENCE—what tends to show relation of employer and em-
ploye. Held, that the particular letters received in evidence in this
case were competent as tending to show the relation of employer
and employe.

Action in case for personal injuries. Appeal from the City
Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding.
Heard in this court at the August term, 1908. Affirmed. Opinion
filed June 15, 1909.

DAN MCGLYNN, for appellant.

R. V. GUSTIN and D. J. SULLIVAN, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the
court.

This suit was brought by A. J. Magill, in his life-
time, against appellant and Armour & Co., to recover
damages for personal injuries received by him, while
in the employ of the latter, in the yards of its packing
plant at East St. Louis, Illinois. At the close of all
the evidence, plaintiff dismissed his suit as to Armour
& Co., after which the jury returned a verdict in his
favor for $7,500 and judgment was rendered for that
amount.

The original plaintiff died after the appeal was
taken and his death having been suggested, Frederick
B. Harding, his administrator, has been substituted
as appellee.

The proofs as disclosed by the record, show that ap-
pellant has for a number of years maintained stock
yards at or adjoining said city of East St. Louis, and
has also been engaged in a general switching business,
delivering cars to and receiving them from the various
railroads in the vicinity. In the prosecution of its
switching business, it maintained switch yards,
equipped with railroad tracks, a roundhouse, a ma-
chine shop and nine switch engines, employing a
switching crew for each engine. In the vicinity of ap-

pellant's switch yards there are a number of large packing houses, whose switching is done by appellant, among them being the plant of Armour & Co. In pursuance of this work appellant sent a switching crew with an engine to the plant of Armour & Co. each day, generally, though not always, the same crew, and also sent other crews there for night work, when occasion required it. For convenience to all concerned, the tracks in the inclosure of the Armour plant were classified and numbered. Near the fence on the northwest side of the inclosure was a main lead track, known as the fence track, and leading off from it at regular intervals were other tracks, extending towards the southeast, among them being certain tracks numbered consecutively from one to ten, called repair tracks. The numbered tracks did not all connect directly with the fence track, but were arranged in groups of two or more tracks, each group connecting with the fence track by a short lead track. Tracks Nos. 3 and 4 formed one of these groups and in order to place a car upon either of them, it was necessary to throw a switch from the fence track onto the short lead track and also a second switch at the point where the short lead divided into the pair of tracks, the second switch determining upon which of the pair of tracks the incoming cars would be placed. The switching was done by appellant for Armour & Co., under a contract by which appellant furnished its own engine and crew in charge of a foreman, who directed the details of the switching work. For switching cars from one place to another about the plant at East St. Louis, and for moving cars to and from that plant to other designated places in the vicinity, appellant was paid an agreed price per car by Armour & Co. When cars loaded with their products were consigned to customers at a distance, Armour & Co. paid a through rate to the carrying railroads, and those roads paid appellant a switching charge of $2 a car for delivering the cars to them from the Armour plant. For this same com-

pensation it was the duty of appellant to return the empty cars and place them on the Armour tracks in its yards. Appellant's same crew which did the switching at the Armour plant also delivered loaded cars from the East St. Louis plant to the carrying railroads and returned the empty cars. Appellant's crew got certain directions as to what it was to do before going to the Armour plant in the morning, from what was known as the "stock yards bulletin" in the office of appellant. Directions concerning the movement of the cars, from one track to another within the Armour yards and between the plant and other places near by, were given to the crew by a yard master employed by Armour & Co., who also gave the crew switching lists for cars loaded and ready for delivery to carrying roads.

On August 15, 1907, in the middle of the afternoon, a switching crew was at work in the Armour yards, distributing empty cars, which had been returned from the carrying railroads. Repair track No. 4 was full of cars and, as was the custom, a space had been left at the end of every second car, so that the repairers and cleaners could get about them conveniently. When such was the case, the track was called "set," and it was the custom of the yards and so understood, that no more cars should be set in on that track, or the cars disturbed so as to interfere in any way with the safety of the workmen. When, on this occasion, track No. 4 was "set," the foreman of the switching crew threw the switch between the short lead and tracks 3 and 4, so as to connect track No. 3 with the lead, cutting out No. 4, and took all the crew, except a brakeman named Wysong, with the engine and went out of the yards to bring in more cars and distribute them on the proper tracks. When the crew returned, it started, under the direction of the foreman, to send several cars over the short lead, connecting 3 and 4 with the fence lead track, intending to kick them in on track No. 3; but in the meantime the switch had been

thrown back from No. 3 to No. 4, and the cars ran in on the latter track, violently striking the spaced cars loaded there and causing them to break loose and move. Magill was at work under one of the cars, and when the impact occurred, the car under which he was located moved and a car wheel ran over his leg, cutting it off.

So far as the questions of fact involved are concerned, the only controversy was as to whether the switchman Wysong, by mistake, set the switch so as to permit the cars to run in on track No. 4 and cause the injury. When the rest of the crew left the yards the foreman set the switch, so as to open up track No. 3. Wysong was left alone at the switch and no one else was near it during the absence of the crew. He testified that he never touched it, but one of the switching crew swore that he saw Wysong throw the switch just before the accident and another witness swore that Wysong said, "I lined that switch for No. 3 and somebody changed it." If Wysong touched the switch at all, he made the mistake which caused the injury, and the proof was such that the jury could not have reasonably found otherwise than in favor of appellee, upon this question.

The sufficiency of the facts proven to support the verdict is recognized by counsel for appellant, who asserts that the important questions arising on the record are those relating to the action of the court below in regard to the instructions and the admission of certain evidence offered by appellee.

The principal complaint in regard to the instructions, and the only one which appears to us to be of sufficient importance to demand attention here, is directed towards the second instruction given for appellee. This instruction is as follows:

"The court instructs the jury if you believe from the evidence that the injury was caused by the negligence of one Wysong in throwing a switch, and if you further believe from a preponderance of the evidence that the said Wysong was then employed as a switch-

man for the St. Louis National Stock Yards and was under the control and direction of the St. Louis National Stock Yards and that Armour & Co. had no power or authority over him, then the fact, if proven, that the yardmaster of Armour & Co. may at times have given directions to the engine crew as to what work should be done, and when it should be done, leaving the details to the switching crew, if the preponderance of the evidence shows this, would not of itself necessarily make the said Wysong the servant of Armour & Company."

Eight reasons are given by appellant why this instruction is said to be objectionable. The first is that it assumes if the switch was thrown by Wysong it was negligence. It is not entirely correct to state that the instruction contains the assumption complained of, but even if it was so, it would not be harmful because the questions as to whether the throwing of the switch was negligence, was not the question to which the instruction as a whole was directed and intended to apply, but even if such assumption did exist, it is not error in this case for the further reason that there can be no question whatever, under the facts and circumstances in evidence, but that if Wysong threw the switch, it was negligence, and the case was tried by both parties upon that theory.

It is next said that the instruction singles out the testimony of the witness Jones as to Wysong's conduct, thereby giving it undue prominence. The instruction does not mention the witness Jones and in fact the jury could well have found that Wysong threw the switch if Jones had not testified in the case. The instruction is therefore not subject to the objection made.

It is next urged that it makes Wysong's employment by the stock yards a prominent feature when this was not in dispute. The instruction does not appear to us to give any undue or unnecessary prominence to this feature of the case, and submits to the jury the question whether Wysong was in fact employed as a switchman for the stock yards.

It is further said that the instruction violates a well-established rule of law prohibiting the singling out of evidentiary facts, and telling the jury that certain conclusions do not as a matter of law follow from proof of the same. While there is some foundation for this objection raised to the instruction, yet it is not of controlling importance here for the reason that the rule against singling out and giving prominence to certain facts is directed mainly against the singling out of inconclusive and uncontrolling facts, whereas the facts singled out in this instruction were of controlling importance. City of Waverly v. Henry, 67 Ill. App. 408; Koehler v. Miller, 21 *id.* 557; Crittenden v. Evans, 41 Ill. 251; Phillips v. Roberts, 90 Ill. 493.

The other objections urged to the instruction relate to the bearing the same had upon the question whether the members of the switching crew were in fact servants of appellant or of Armour & Co. This question was indeed the principal one raised upon the trial of the case below, and is the main subject of discussion here. The proofs show in addition to the facts hereinbefore stated that the crew in question was employed and paid by appellant; that while complaints of neglect of duty by or inefficiency of members of a crew made by the yardmaster of Armour & Co. would be considered by appellant, yet appellant alone had the right to discharge the members of the crew; that Armour & Co. had nothing whatever to do with the details of the switching but simply directed what cars were to be moved and where they were to be taken or placed, the manner of doing the same being left entirely to the switching crew. The facts appear to us to show clearly that the members of the crew were under the control and direction of appellant, and were its servants. Instruction No. 2 was properly applicable to these facts and the giving of it was not error. In this connection, we may consider the complaint of appellant, that certain evidence offered by appellee was admitted in error, over objection. The evidence re-

ferred to was a letter written by Armour & Co. to appellant, September 6, 1907, complaining that a crew of the latter, when delivering cars, had permitted an engine to run into two cars on the repair track, causing them to break through and destroy the doors of the Armour car shops, and stating that the damage would be charged to appellant. Also, a letter from appellant's superintendent of terminals, written a few days later, stating that an examination of the injuries to the shops had been made and that Armour's foreman had been told to advise appellant of the amount of the damages. The objection made by appellant is that the letters showed the injuries complained of occurred in the night time and that the engine was not in control of the regular day crew but of a special crew of appellant, engaged in delivering cars in the night time, with which crew Armour & Co. had nothing to do. There is nothing upon the face of the letters to show that the injuries to the shops occurred in the night time, nor that the regular crew was not in charge of the engine, but waiving that question, we think the evidence was admissible as tending to show that appellant considered crews it sent into the Armour yards its own servants and recognized its liability to pay Armour & Co. for injuries done by such crews. In this connection it is proper to say that there is also evidence tending to show that appellant on one occasion repaired at its own expense the track of Armour & Co. when it was torn up by an engine in charge of a day switching crew.

The proofs in this case show that Magill was injured while in the exercise of due care for his own safety by the negligence of a switching crew in the employ of appellant, and upon the whole record substantial justice appears to us to have been done. No errors warranting a reversal were committed in the trial of the case, and the judgment of the court below is therefore affirmed.

*Affirmed.*